Scott, J.
It appears from the amended petition of defendant in error, and the exhibits attached thereto, that the original action was brought to recover money claimed to be due to him under a special contract, by way of interest on shares of capital stock, received by him from the plaintiff in error, in consideration of certain lands conveyed by him to the corporation. Whether this transaction be called a sale of land, to be paid for in the stock of the company, or a sale of stock to be paid for in land, its essential character remains the same.
Waiving all question as to the power of the corporation to sell its stock for land, we think the defendant in error can, at least, claim no rights in respect to this stock because of his having paid for it in land which he could not assert if the stock had been paid for in cash.
The issue of law made by the pleadings in the court below present the question whether a railroad company, incorporated under the act of May 1, 1852, can by contract bind itself to pay annual interest to a stockholder at the rate of six per cent, on the amount of stock by him subscribed or purchased, and whether such con- ' *497 tract can be enforced against tbe corporation, while it is largely indebted for work done and ^materials furnished for the construction of its road; while, for want of means, the construction of the road has been for years and still is suspended; and while the corporation has no resources or means for the payment of such interest except in capital stock.
By section 22 of the act of February 11,1848, regulating railroad companies, it is provided that11 it shall be lawful for the directors-of any railroad company, semi-annually, to compute, allow, and pay to its stockholders interest at the rate of six per centum on all-moneys theretofore paid as capital stock, to be set apart and paid in stock or cash, as the directors may determine: Provided, that they shall not allow or pay any interest in cash to stockholders while any debt of such railroad company for labor or materials-shall be due and unpaid; and provided further, that the capital stock shall in no case be reduced by such payment of interest.”
This enactment has never been repealed, either expressly or by implication; and while many sections of the act are, in terms, applicable only to companies organized under that act, this section is in the form of a limited grant of power to “ the directors of any railroad company,” and seems, from its general language, to have been designed to embrace all railroad companies, whether organized before or after its passage. If this section be in force as to railroad companies incorporated under the act of 1852, it is clear that the1 plaintiff below could not maintain his action under the state of facts-set up in the answer, and his demurrer to the answer should have been overruled.
But it is said that the act of 1852 was the inauguration of a new system, providing for the incorporation of railroad companies, without special charters, under a general law; that it embodies-many of the provisions of the act of 1848, with occasional modifications ; that it contains no provision on the subject to which the section we are considering relates; that it was designed to supersede all prior legislation on the same subject; and that companies incorporated under it are therefore governed by its provisions, alone. This view of the case is certainly plausible; but its force is much weakened by the fact that the various sections of the act of 1848 which *are transferred to that of 1852, were in the former act limited to companies organized under it; and it became-necessary, therefore, to embody them in the new act in order to- *498 give them effect upon companies to be organized tinder the new system. But this section 22 being already general in its terms, needed no re-enactment for such a purpose.
But if it be conceded that we are to look only to the act of 1852 for the powers conferred and restrictions imposed upon the plaintiff in error, does it follow that the defendant in error can enforce his contract under the circumstances disclosed by the answer in the court below ? The legislature in 1848 seems to have supposed that it required an express grant of power to authorize the directors of a railroad company to apply the resources of the company to the payment of interest on subscriptions of stock. Such power was, accordingly, expressly conferred, but carefully limited. The act of 1852 contains no express grant of such power, nor do we find in it any authority conferred on the directors from which such a power can arise by fair implication. The power to construct a railroad is one thing, and the power on the part of the directors to apply the stock subscribed and paid in for the purposes'of such construction, to payment of interest on stock purchased or subscribed and paid for, is another and very different thing. The directors may well have power to pay dividends to stockholders out of profits which have accrued from the use of their road, and yet have no power to pay dividends, under the name of interest, out of the capital stock contributed for a different purpose, before any income has arisen, while the road is unfinished, and the debts incurred in its construction remain unpaid.
As we understand the petition of defendant in error, this suit is brought on a special contract entered into with him by the corporation for the annual payment of interest on the stock sold to him, until the completion of the road. This special contract is evidenced by an indorsement of its terms on the certificate of stock issued to him. The rights which he claims are not those of a general stockholder, but rest on special contract. We find nothing in the act of 1852 which authorizes the corporation to issue stock certificates of ^different kinds, sdme bearing interest and others not; or to subject the stock paid for in cash to the payment of interest, for an indefinite time, upon stock paid for in land. Without express authority of law, we think the corporation has no such power of discrimination between stockholders. And if all the stockholders are, by similar contracts or otherwise, entitled to de.mand interest on Stock paid in, we think it is clearly against public *499 policy that the stock subscribed for the building of the road should be diverted from its proper purpose, and distributed among the stockholders in payment of interest, leaving the debts incurred in the prosecution of the enterprise unpaid.
We find but little authority having any direct bearing on this question. In Waterman v. Troy and Greenfield Railroad Company, 8 Gray, 433, it was held that an agreement of a railroad corporation with a subscriber for stock therein, that he “ shall have the privilege of paying in, at any time, the whole or any part of his subscription, and shall receive interest thereon until the road goes into operation,” does not bind the corporation to pay him any interest until the road goes into operation. What were the powers of the corporation under its charter, in that case, does not appear. But as the contract did not definitely fix the time for the payment of interest, the court say: “ It is unreasonable to suppose that the defendants intended to agree to pay it to subscribers while the road was in process of construction, and when they would require their funds to defray the necessary charges of building the road, and before they were in receipt of any income. It is much more in accordance with the object which the parties had in view, to infer that interest was to be paid after the assessments had all been paid in, the road completed and in operation, and they were in receipt of income from its business.”
In the present case, the contract requires the interest to be paid “ in cash, annually, on the 1st day of November, until the completion of the road.” If it would be “ unreasonable ” to suppose that the corporation would make such a contract, the power to make it should be clear, and can not be implied from a mere general power “to do all needful acts to carry *into effect the object for which it was created.” Act of 1852, sec. 3.
Whatever may be the doctrine in other states, we think the act of 1848 contains an unequivocal declaration of legislative policy in this state, adverse to the right of a railroad corporation to pay interest on stock certificates out of the capital stock of the corporation, or whilst debts incurred in the construction of the road remain unpaid. That policy still remains in full force as to all companies incorporated prior to 1852. It is difficult to see why it should be continued as to them, and abandoned as to companies of a later organization. The absence of any provision in the act of 1852, authorizing the payment of interest on stock, if significant of *500 anything more than a purpose to leave the prior law on that subject unchanged, would indicate a purpose wholly to withhold the-power, rather than an intention to enlarge it, by removing all restrictions upon'its exercise. We think that neither under the act of 1848, nor under that of 1852, can the defendant in error enforce his cause of action, under the circumstances stated in the answer, and that the demurrer to the answer should have been overruled.
Judgment reversed, and cause remanded to the court of common pleas.
Day, C. J., and White, Welch, and Brinkerhoee, JJ., concurred..